## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. **16-cv-00159-WJM-MEH**

**DESIREE JOHNSON**,

      Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA**, dba CIGNA and aka CIGNA Group Insurance,

      Defendant.

---

## PROPOSED SCHEDULING ORDER - ERISA ACTION

---

Based on the submissions of the parties through their counsel, the Court adopts this scheduling order.

### 1.  DATE OF CONFERENCE AND APPEARANCES

The scheduling conference was held on February 29, 2016 at 9:45 a.m. before United States Magistrate Judge Michael E. Hegarty. Plaintiff Desiree Johnson appeared through her counsel, Dennis P. Walker, BOESEN LAW, LLC, 4100 East Mississippi Avenue, 19th Floor, Denver, Co. 80246, (303) 999-9999, dwalker@boesenlaw.com. Defendant Life Insurance Company of North America appeared through its counsel, Jack M. Englert, Jr., Holland & Hart, LLP, 6380 South Fiddlers Green Circle, Suite 500, Greenwood Village, Colorado, 80111, (303) 290-1087, jenglert@hollandhart.com.

### 2.  STATEMENT OF JURISDICTION

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), in particular, 29 U.S.C. §§ 1132(e)(1) &

1132(f).  This action was filed by Plaintiff in the District Court in and for the City and County of Denver, Colorado. This action was removed by Defendant based on federal subject matter jurisdiction.

### 3.  CLAIMS AND DEFENSES

A.      <u>Plaintiff's Position</u>.

First, Desiree Johnson claims that she is entitled to the payment of long-term disability (LTD) benefits. This is based upon her disability.  She is a participant under the GEICO LTD Plan and an insured under the LTD policy. Life Insurance Company of North America, doing business as CIGNA and also known as CIGNA Group Insurance, (referred to for convenience as "CIGNA") paid LTD benefits to Desiree Johnson for over 24 months. CIGNA accepted her adverse health conditions as demonstrating her disability from her own occupation under the LTD policy.

After 24 months, CIGNA cut off LTD benefits. Desiree Johnson's functional impairments had not improved. Her health conditions have still severely impaired her.  CIGNA speculated that Desiree Johnson was no longer "disabled."  She appealed CIGNA's cutoff decision.  At CIGNA's request, she provided medical evidence, including follow-up evaluations and reports. They demonstrated her disability due to complex problems, including trigeminal neuralgia ("TN"), debilitating facial and neck pain, head and neck impairments, the need for periodic injections that would only give her partial relief, the need for medicines that compromised her functioning, episodes of severe pain attacks, resulting severe fatigue and cognitive deficits, and facial distortion.

CIGNA argued that <u>because</u> the policy definition changed from a lack of ability to perform the material duties of her *own occupation* to a lack of ability to perform material duties of *any (relevant) occupation* (i.e., in terms of her relevant education, training, experience and earnings history – with at least 80% of her prior earnings as indexed for inflation), <u>then CIGNA could presume</u> some restoration of work capacity. CIGNA used the change in definition of disability to argue that Desiree Johnson was no longer disabled. However, while the policy definition becomes more stringent after 24 months, the known functional impairments accepted by CIGNA for the first 24 months of paid LTD benefits have also proved that Desiree Johnson was and is disabled from <u>any</u> relevant occupation.

In violation of its duties as a Plan fiduciary, CIGNA minimized her health problems and referred to them as merely "self-reported." CIGNA speculated that her impairments *might* not be shown by more "objective" findings. The policy does not allow for inappropriate speculation (i.e., inappropriate in light of medical facts for Desiree Johnson's diagnosed conditions). CIGNA used "cherry-picking" to avoid payment.

As known to CIGNA, the Social Security Administration (SSA) evaluated Desiree Johnson. The SSA came to the pertinent conclusion that she was totally disabled from any, substantial, gainful employment. That is a much tougher standard than under the LTD policy.

Those and other facts were available to CIGNA. They should have satisfied any question CIGNA raised. CIGNA has known that Desiree Johnson's significant impairments have precluded her from any full-time, relevant employment. Her physicians have confirmed that fact.

In May of 2015, despite evidence, CIGNA confirmed it cut off benefits, chose to treat the evidence as immaterial, and denied Desiree Johnson's appeals. CIGNA has not given full and fair consideration to the available evidence.

Desiree Johnson. Desiree Johnson was compelled to initiate this action and seeks past due and accruing LTD benefits and related relief under ERISA, 29 U.S.C. §1132.

CIGNA's cutoff of LTD benefits was arbitrary and capricious, an abuse of discretion, and not supported by substantial evidence. The administrative record does not show that Desiree Johnson recovered to be able to sustain relevant full-time employment. The record will demonstrate that CIGNA as Plan fiduciary, claims administrator, and *de facto* Plan Administrator chose to ignore evidence and speculate. Further evaluations have demonstrated that Desiree Johnson continues to be disabled under the LTD policy.  She continues to submit ongoing evidence to CIGNA as expected under the policy. Her LTD coverage remains in force.

The record indicates that CIGNA made its decisions while adversely influenced by conflicts of interest. The benefits are funded by the CIGNA through the policy of insurance from premiums paid by Desiree Johnson and GEICO. Desiree Johnson paid additional premiums to "buy up" benefits at the highest rate offered by CIGNA, i.e., 2/3 of her monthly earnings as a manager for GEICO. Employees of CIGNA were loyal to the financial interests of CIGNA. They made decisions to save CIGNA's resources and protect its earnings. Their decisions do not suggest independent determinations by Plan fiduciaries acting solely in the interests of this Plan participant. See 29 USC § 1104 (a)(1).

CIGNA committed procedural irregularities in determining the LTD benefits claim and appeals.

CIGNA sent her to an evaluation by its hired doctor. He expressed to her his ignorance of TN.  That is shown in his report to CIGNA. He supposed that she did not have pain, fatigue and cognitive deficits that have robbed her of the ability to sustain employment.

CIGNA deflected Desiree Johnson's efforts for meaningful review. CIGNA delayed claim processing under a pretext of insufficient authorization to share facts.  CIGNA delayed providing information that was needed. CIGNA declined evidence of ongoing care, asserting that evidence was being returned to her.

CIGNA acted like it would meaningfully consider the decision of the SSA, but CIGNA did not fulfill that obligation.

CIGNA delayed providing to Desiree Johnson Plan documents and information in its possession during her appeal.

The evidence supported the disability of Desiree Johnson.  CIGNA arbitrarily refused to consider available evidence. CIGNA turned a "blind eye" to evidence supporting Desiree Johnson's position. CIGNA "cherry picked" evidence to look for an excuse to stop paying her benefits.

CIGNA premised its decision solely upon a supposition that Desiree Johnson was no longer disabled.

Desiree Johnson is entitled to ongoing and future benefits, along with interest on past due benefits at 8% per annum, Section 5-12-102, C.R.S., as amended, and costs, expenses, and reasonable attorney's fees under 29 USC Section 1132 (g).

Second, judicial review should be *de novo* or, in the alternative, if conducted under an arbitrary and capricious standard, review should be conducted with appropriately *reduced*

*deference* to all discretionary and other decisions made by CIGNA. *Metropolitan Life Insurance v. Glenn*, 554 U.S. 105, 108, 115, 117-119 (2008). Plaintiff submits that judicial review should be conducted *de novo*, given the adversarial claims handling by CIGNA. Alternatively, for determining whether a plan administrator's decision is arbitrary and capricious under that standard, the district court generally may consider only the arguments and evidence before administrator at the time of the decision. *Sandoval v. Aetna Life and Casualty Insurance Company,* 967 F.2d 377, 380 (10th Cir. 1992); and see *DeGrado v. Jefferson Pilot Financial Insurance Company,* 451 F.3d 1161, 1169 (10th Cir. 2006). But, that should still mean actually examining the influence of the conflict, the insurer's usual versus applied procedures, and the insurer's history of biased claims administration. *Metropolitan Life Insurance v. Glenn,* 554 U.S. 105 (2008). Those facts are not likely to be set forth in the administrative record complied by CIGNA.

The potential for the plan insurer to have been operating under a conflict of interest and committing procedural irregularities is important for judicial review. *Fought v. UNUM Life Insurance Company of America,* 379 F.3d 997, 1003 (10th Cir. 2004) (partly abrogated by *MetLife v. Glenn*); *Metropolitan Life Insurance v. Glenn*, 554 U.S. 105 (2008). Conflicts of interest must be weighed among all factors in determining whether there is an abuse of discretion. *Id.* A conflicted fiduciary may favor, consciously or unconsciously, its interests over the interests of the plan participant. *Id.* When there is a conflict of interest, deference may be appropriately decreased. *Id.*

Either way, for the limited questions about a history of biased claims administration, procedural irregularities and conflicts of interest and the role they played in CIGNA's

decisions, some discovery is warranted. Because CIGNA is a fiduciary who "wears two hats," one of a fiduciary and one of an insurer protecting its own assets, then the fact questions are about whether there is "proof that the plan [insurer's] dual role jeopardized its impartiality." See, *Cirulis v. UNUM Corp.,* 321 F.3d 1010, 1017 n. 6 (10th Cir. 2003), which in turn cited *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1097 (10th Cir. 1999). These questions require limited discovery. It is not likely that these fact questions will be answered by only considering the initial administrative record (claim file and policy).

It is important for the Court to consider under the facts a reduction in deference (1) when the plan insurer operates under an inherent or actual conflict of interest; (2) when the plan insurer operates under a proven conflict of interest; or (3) when a serious procedural irregularity exists. In order to demonstrate facts on these points it is necessary to allow limited discovery. It is unlikely that the administrative record, alone, will address such proof. The court should ensure that the decision was a reasoned application of the terms of the policy untainted by the conflicts of interest, procedural irregularities or a history of bias.

In conducting judicial review the court should be provided facts that show the conflict of interest did not taint the decisions. Limited discovery is important to allow this Court to address the circumstances as alleged here.

CIGNA deprived Desiree Johnson of her right to full and fair review under ERISA. 29 USC Section 1133. Because the facts in the record indicate the influence of conflicts of interest and procedural irregularities, it is also appropriate to allow limited discovery to complete a suitable inquiry about the influence of the conflicts of interest, the procedural

requirements applicable to CIGNA and irregularities, and CIGNA's history of biased claims administration.

B.      Defendant's Position.

Plaintiff Desiree Johnson ("Johnson") is a former Field Supervisor/Regional Manager of GEICO.  Johnson was a participant in GEICO's group employee long term disability plan ("Plan").  Defendant Life Insurance Company of North America ("LINA") is the claim administrator of the Plan, and has the discretionary authority to decide claims for long term disability ("LTD") benefits under the Plan.  LINA also issued Group Policy No. FLK-980028 to GEICO in order to fund the LTD benefits of the Plan.  ERISA governs the Plan and Johnson's claim for LTD benefits under the Plan.

Johnson submitted a LTD claim under the Plan.  LINA approved the payment of LTD benefits to Johnson subject to Johnson's continued satisfaction of the Plan's terms and conditions.  LINA routinely requested updated medical records in order to determine whether Johnson continued to be disabled under the Plan's terms.

After Johnson had received 24 months of LTD benefits, under the terms of Plan, the focus of whether Johnson was disabled shifted to  whether she could perform ***any occupation*** within her capabilities ("Any Occupation Definition").  On December 11, 2012, LINA notified Johnson that it was beginning the investigation of whether she would continue to be disabled under the Any Occupation Definition.  LINA requested updated information from Johnson and her primary treating physician.

LINA arranged for an Independent Medical Examination ("IME") of Johnson, which Dr. Lloyd Thurston performed.  Dr. Thurston opined that Johnson's "pain complaints are not

supported by the objective physical examination findings." Dr. Thurston stated his view that Johnson "is significantly exaggerating her physical symptoms and limitations," and that Johnson "demonstrates evidence of significant anxiety and likely Pain Disorder." Dr. Thurston assigned certain restrictions and limitations to Johnson.

LINA prepared a Transferable Skills Analysis ("TSA") based on Johnson's education, training, and work experience as well as the functional restrictions and limitations that Dr. Thurston had assigned to Johnson. The TSA identified several occupations within Johnson's capabilities.

On August 21, 2013, LINA issued the determination resulting from its investigation of whether Johnson would continue to be disabled under the Plan. LINA concluded that Johnson no longer met the Plan's definition of disability, and ended the payment of LTD benefits to her.

Johnson's counsel submitted an appeal. As part of its review of the appeal, LINA referred the file to MCN, a third party vendor, for a independent physician peer review. MCN assigned the project to Dr. Todd Graham (Board Certified in Physical Medicine & Rehabilitation and Pain Medicine). Dr. Graham found no medical evidence that would support a functional impairment.

Based on its review of the evidence in the administrative record and Dr. Graham's report, LINA issued an appeal determination upholding the decision to end the payment of LTD benefits to Johnson.

Johnson's counsel submitted a second voluntary appeal, which LINA agreed to consider.

LINA referred the file to another third party vendor, MLS, to obtain a new round of independent physician peer reviews as part of the second appeal. MLS assigned the project to

Dr. Jamie Lewis (Board Certified in Physical Medicine & Rehabilitation and Pain Medicine) and Dr. David Hoenig (Board Certified in Psychiatry, Neurology, and Pain Medicine). Dr. Lewis concluded that the evidence did not support a functional impairment "from a physical medicine and pain perspective." Dr. Hoenig found no evidence that pain affected Johnson's cognition. Dr. Hoenig concluded that Johnson did not have any neurological impairments. Dr. Hoenig also found no evidence supporting a functional impairment due to pain.

Based on the evidence in the administrative record, including the reports of Dr. Lewis and Dr. Hoenig, LINA issued its second appeal determination. LINA again upheld the decision to end the payment of LTD benefits to Johnson. LINA informed Johnson that she had exhausted her administrative remedies, and closed the administrative record.

The Court will decide this case under the arbitrary and capricious standard of review. The Court will consider whether LINA's claim and appeal determinations were reasonable, not whether the determinations were correct or the only possible determinations. The Court will uphold the claim and appeal determinations as long as LINA based the determinations on substantial evidence in the administrative record. Substantial evidence is more than a scintilla but less than a preponderance of evidence.

LINA based its claim and appeal determinations on substantial evidence in the administrative record before it. The medical evidence did not support Johnson continuing to be disabled under the Any Occupation Definition. LINA provided a thorough and objective review of Johnson's claim for continued LTD benefits under the Any Occupation Definition. LINA reasonably and appropriately based its determination on the pertinent terms of the Plan and the

evidence in the administrative record before it.  Therefore, the Court should enter judgment in favor of LINA upholding its claim and appeal determinations.

## 4.  UNDISPUTED FACTS

*The parties disagree here.*

A.    <u>Plaintiff's Position.</u>

<u>Plaintiff</u> submits that to assist the parties in the briefing of the merits, the parties should stipulate to the facts.

<u>Plaintiff's proposed undisputed facts</u>:

1.    Desiree Johnson was employed by GEICO Corporation as an automobile property damage claims manager, working as a field supervisor and regional manager. She worked in Colorado and other areas, also serving at times as a performance review analyst and auditor.

2.    Desiree Johnson worked full time for GEICO before taking medical leave in December, 2010.

3.    Desiree Johnson has not returned to work in any full-time employment since stopping active work for GEICO.

4.    The Social Security Administration later awarded Desiree Johnson Social Security Disability Income ("SSDI") benefits and found her to be totally disabled from any substantial gainful activity. The effective date of her disability for SSDI purposes is in December 2010. The initial SSDI monthly benefit of $ 2,052 was given, retroactively, to be effective as of June 2011. While Desiree Johnson's two children are under 19 and still in high school her SSDI benefit entitlement for them relating to her total disability has been $ 513 per month for her older

child, which ended with May, 2015, and is $ 513 per month for her younger child, which is expected to end with May 2017.

5.       After the policy waiting period of 180 days, and then for about 24 months, from June 6, 2011 to July 31, 2013, CIGNA paid Desiree Johnson LTD benefits .  The rate was 66 2/3 % of her prior basic monthly earnings as an employee of GEICO.   The gross LTD benefit paid was $ 4,355 per month.

6.       Desiree Johnson's regular and relevant earnings under the LTD policy were based on her annual salary with GEICO of about $ 80,000.

7.       As an employee of GEICO, Desiree Johnson was covered by the GEICO Corporation Long-Term Disability Plan ("LTD Plan") through the LTD policy. She was eligible and became an LTD Plan participant and insured under the LTD policy. She met the terms and conditions of the LTD policy issued to GEICO by Defendant CIGNA.

8.       Desiree Johnson paid premiums to CIGNA through GEICO to "buy-up" the level of LTD benefits for disability under the LTD policy so that benefits would be paid at the maximum available rate of 66 2/3% of her monthly earnings at GEICO.

9.       Desiree Johnson asserted to CIGNA that she was disabled within the meaning of the applicable LTD policy.

10.      CIGNA as Plan insurer and fiduciary considered Desiree Johnson's employment and health facts in conjunction with her claim for LTD benefits.

11.      CIGNA decided, based on available facts about Desiree Johnson's employment and health, that she should be paid and did pay her LTD benefits under the policy for her

disability for about the first 24 months of her claimed disability under the policy (after the expiration of a 180-day LTD policy waiting period).

12.     CIGNA paid Desiree Johnson LTD benefits under the LTD policy for the period of June 6, 2011 through July 31, 2013.

13.     CIGNA announced to Desiree Johnson by its letter dated August 21, 2013, that CIGNA had decided to stop paying her LTD benefits effective as of July 31, 2013.

14.     The Court has subject matter jurisdiction and personal jurisdiction over the parties. Venue is proper in this Court. This action was timely filed by Plaintiff.

15.     The LTD policy insures the LTD Plan. The policy is governed by and subject to ERISA, 29 U.S.C. §1001, *et seq.,* as an employee welfare benefits plan.

16.     The LTD Plan and policy were established and operated as a part of the GEICO Corporation Consolidated Welfare Benefits Program.

17.     During the time that CIGNA paid Desiree Johnson LTD benefits under the LTD policy and Plan, she was considered covered by, eligible for, and a participant in the LTD Plan and an insured under the LTD policy.

18.     As part of her LTD benefits claim and during the period that LTD benefits were paid to her by CIGNA under the LTD policy Plan, Desiree Johnson asserted that her health problems and impairments disabled her within the meaning of the LTD policy.  She said that addressed her own occupation or regular employment for GEICO and any occupation for which she might be qualified based on her education, training, and experience and her relevant earnings history.

19.     Desiree Johnson asserted that her health conditions and impairments have involved and continue to include trigeminal neuralgia ("TN"), occipital neuralgia, and peripheral neuralgia, and neuropathy, with cervical disc degeneration, face, head and neck impairments and debilitating pain, related severe fatigue, cognitive deficits, loss of stamina, and diminished productivity, and loss of capacity associated with diagnoses and conditions that were described by her healthcare providers.

20.     CIGNA had and continues to have access to vocational and health information about Desiree Johnson.

21.     Desiree Johnson asserted to CIGNA that her conditions and impairments have involved severe pain, fatigue, weakness, unpredictable capacity and cognitive deficits.

22.     CIGNA has asserted that it has overpaid LTD benefits under the policy because of the retroactive award by the SSA of SSDI benefits that are to be offset from gross LTD benefits.

23.     Desiree Johnson timely appealed the denial or cessation of LTD benefits announced by CIGNA in August 2013.

24.     Desiree Johnson fully exhausted administrative review under the Plan and LTD policy.

25.     CIGNA announced its final denial of her appeals in May 2015.

B.      <u>Defendant's Position.</u>

The Court's ERISA scheduling order form does not contain a section regarding "undisputed facts."  The Court's form follows the ERISA precedent.  Rule 56 standards are inapplicable to an ERISA benefits case.  *See, e.g.*, *LaAsmar v. Phelps Dodge Corp., Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir.

2010).  The Court will decide the case in a manner akin to an administrative appeal based on the evidence in the administrative appeal.  *See, e.g., Shafer v. Metropolitan Life Ins. Co.*, No. 14-cv-00656-RM-KMT, 2015 WL 4055473 at *5 (D. Colo. July 2, 2015).  Consequently, there is no need for a stipulation relating to "undisputed facts."

### 5.  COMPUTATION OF DAMAGES

A.      <u>Plaintiff's Position</u>:

Plaintiff asserts the right to recover:

1.      LTD benefits, past due for each month from July 31, 2013 through the time of judgment, at the gross LTD benefit rate of 66 2/3 % of her prior basic monthly earnings and at least $4,355 per month. That gross LTD benefit is offset by net Social Security Disability Insurance (SSDI) benefits that are actually received using the initial entitlement amount of $2,052 per month, starting with June, 2013. The SSDI benefit offset should be first reduced for any attorney's fees withheld by the Social Security Administration in conjunction with the payment of the retroactive SSDI benefits. Also offset are dependent SSDI benefits for her two children, while received;

2.      Interest on past due LTD benefits for each monthly benefit amount at the rate of 8% per annum, premised upon the adoption and use of interest according to Colorado statute, §5-12-102, C.R.S., as amended, and calculated through the date of judgment;

3.      With judicial review to be based on ERISA and using *de novo* review, or if based on an arbitrary and capricious standard of review, judicial review should occur with reduced deference; and the Court should allow an augmented record, with limited reasonable discovery;

4.      For related legal and equitable relief for the denial and deprivation of benefits to be determined by the court, including such relief and remedies as are determined to overcome the denial of "full and fair review," under 29 U.S.C. §1132 and §1133;

5.      Plus the costs, expenses, and reasonable attorney's fees of Plaintiff as the Plan participant LTD policy insured for overcoming the wrongful denial of benefits pursuant to 29 U.S.C. §1132(g), for the reasonable value of legal services before and during this action; and

6.      And a determination of Desiree Johnson's rights under the LTD policy and Plan for continued benefits, for LTD benefits while she remains disabled, and a determination that benefits will continue.

B.      <u>Defendant' Position</u>:

LINA denies that Johnson is entitled to any recovery in this case.  Although LINA does not seek the recovery of any damages, it reserves the right to seek the recovery of its legal fees pursuant to 29 U.S.C. § 1132(g) after the Court has issued its ruling on the merits.

## 6.  CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 7.  CASE PLAN & SCHEDULE

*The parties disagree here.*

A.      <u>Plaintiff's Position</u>.

Plaintiff submits a report about the record and ERISA.

1.      <u>Modification of the requirement for disclosures based on ERISA</u>:  Plaintiff has proposed the modification of the requirement for disclosures under Fed. R. Civ. P. 26(a) (1). Because of the emphasis in this action for judicial review under ERISA, 29 U.S.C. §1001, *et*

*seq.,* with the briefing of the merits based upon the administrative record, Plaintiff believes that the administrative record will be filed and suffice for the substance of disclosures under Fed. R. Civ. P. 26(a) (1).  That should be subject to the parties' right to appropriately seek supplementation of the record. Defendant is expected to provide the entire contents of the administrative record.  Plaintiff believes that her potential disclosures would be contained or referred to in the administrative record, as supplemented, if supplementation is necessary and approved.  Plaintiff asks the court to allow for the submission of the administrative record to substitute for disclosures that might otherwise be made under Fed. R. Civ. P. 26(a) (1).

2. <u>Expected contents of the administrative record (in lieu of Rule 26(a) (1) disclosures)</u>: Plaintiff believes that Defendant will argue there need not be supplementation and that any supplementation to include matters dated after Defendant contends the administrative record was "closed" would not be appropriate.  Plaintiff submits that the *administrative record* should be expected to include:

a. A copy of the LTD Plan and any amendments;

b. A copy of applicable Summary Plan Description documents (SPDs) for LTD benefits in use and provided to participants;

c. A copy of the LTD policy and any amendments;

d. A copy of claim review procedures that were applicable, in effect, and made available to participants during Desiree Johnson's employment and LTD benefits claim;

e. A copy of the entire claim file developed and maintained for Desiree Johnson's LTD benefits claim, which should include employment and health information,

data indicating her earnings, eligibility and elections for LTD coverage, the LTD benefits

paid, and all claim correspondence; and

   f.  Supplementation as appropriate.

3.  Deadline for submission of the Administrative Record: <u>July 1, 2016</u>.

4.  Deadline for filing any motion requesting discovery: <u>April 30, 2016</u>.

5.  <u>Informal discovery</u>: *The parties disagree* about whether discovery should

proceed.  Plaintiff proposes informal discovery to include exchanges of information and

documents for the type of discovery proposed by plaintiff, as described below. Defendant

believes that there should be no discovery and that the court's review should be limited to the

administrative.

6.  <u>Electronically stored information</u>: Plaintiff submits the administrative record will

likely include electronically stored information and if the administrative record will be provided

in hardcopy or electronic format. Plaintiff does not have electronically stored information.

Plaintiff has retained photocopies of information made available to Defendant on the issue of her

continued disability and documents to be furnished about her continuing disability, in the event

that material is needed.

7.  <u>Deadline for filing motions to supplement the Administrative Record</u>:

Plaintiff proposes:         <u>August 1, 2016</u>
(or thirty (30) days after the completion of any allowed discovery.)

Defendant proposes:         <u>May 31, 2016</u>.

8.  <u>Discovery</u>:  Plaintiff proposes limited discovery for a determination of the merits

for the subject LTD benefits.  Such limited discovery would be to address matters likely to be

outside the administrative record.

a.      <u>Interrogatories</u>:  Plaintiff proposes about five-seven interrogatories on factual questions that are necessary for the Court to consider to determine facts relevant to the standard of review and any reduction in deference:

i.      The composition of the administrative record and the approach by CIGNA to the consideration of evidence and the conduct of review;

ii.     The existence and severity of the conflicts of interest, and their influence;

iii.    The procedures established by Defendant and those used for this LTD benefits claim, and any procedural irregularities; and

iv.     CIGNA's history of any biased claims administration.

Plaintiff submits that approximately five to seven written interrogatories should allow such facts to be fairly addressed. Interrogatories should be submitted within 30 days after the filing of the administrative record.

b.      <u>Request for production of documents</u>:  Plaintiff seeks permission to use two to three requests to gather relevant documents in the subject areas stated above.

c.      <u>Requests for Admissions</u>: Additionally, while Defendant objects, Plaintiff proposes to make use of ten requests for admissions on the above described limited points that are not fully addressed in the administrative record.

d.      <u>Depositions</u>.  Subject to written discovery responses, Plaintiff proposes two limited depositions of Defendant's claims and appeal personnel and reviewing physician. Plaintiff asserts that one or two limited depositions *may* be suitable, if found to be needed

following completion of limited written discovery, on facts and issues identified by Plaintiff that cannot be fully addressed through the administrative record.

      e.    <u>Discovery cutoff</u>:  Plaintiff submits that to the extent discovery is allowed, it should be completed no later than 75 days after a discovery motion is approved.

      f.    <u>Briefing of the merits</u>: (subject to discovery)

| | |
|---|---|
| Plaintiff's opening brief under ERISA: | <u>September 15, 2016</u> |
| Defendants' Response brief would be due by 30 days after then: | <u>October 17, 2016</u> |
| Plaintiff's Reply brief would be due 20 days thereafter: | <u>November 7, 2016</u> |

B.    <u>Defendant's Position</u>.

All of Johnson's preceding statements are unnecessary and inappropriate in the context of what should be a straightforward proposed scheduling order.

On February 23, 2016, LINA produced to Johnson a bates-stamped copy of the administrative record to Johnson.  The administrative record contains the materials that LINA generated or received in connection with its administration of Johnson's claim until the closing of the administrative record with the final appeal determination on May 22, 2015.

Although the Tenth Circuit has held that "discovery related to the scope and impact of a dual role conflict of interest *may, at times*, be appropriate," the Tenth Circuit also has emphasized that "discovery related to a conflict of interest *may often prove inappropriate*." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1162, 1163 (10th Cir. 2010) (emphasis added).  No other discovery is appropriate in ERISA cases for benefits.  *Id*., 1157; 1159; 1162.  Until LINA sees any written discovery that Johnson may propound, LINA cannot determine whether such written discovery is appropriate based on the principles established in

*Murphy*.  LINA can state at this time that depositions would not be appropriate in this case, and will oppose any request for a deposition.

The parties must file, contemporaneously with the filing of Plaintiff's Reply Brief, a "Joint Motion for Determination" which will serve as notice to the court that briefing has been completed.

## 8.     CONFERENCES

The parties certify that they have discussed the possibilities for settlement or resolution. They will confer about a settlement conference and ADR.

A.     A settlement conference or early neutral evaluation will be held on _____

at _____:_____ am / pm before _____ at _____.

B.     All settlement conferences that take place before the Magistrate Judge shall be confidential.

❑  *Pro se* parties and attorneys only need be present.

❑  *Pro se* parties, attorneys, and client representatives with authority to settle must be present.

❑  Each party shall submit a Confidential Settlement Statement to the Magistrate Judge on or before _____ outlining the facts and issues, as well as the strengths and weaknesses of their case.

C.     Status conferences will be held in this case at the following dates and times:

## 9.     OTHER MATTERS

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any notice of withdrawal, notice of substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the Magistrate Judge assigned to this case.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures established by the judicial officer presiding over the trial of this case.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

With respect to discovery disputes, if applicable, the parties must comply with D.C.COLO.LCivR 7.1(A).

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(D) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

DATED this _____ day of _____, 2016.

**BY THE COURT**:

_____
Michael E. Hegarty
United States Magistrate Judge

APPROVED:

 *s/ Dennis P. Walker*                              
Dennis P. Walker
BOESEN LAW, LLC
4100 East Mississippi Ave., Ste. 1900
Denver, Colorado 80246
Telephone:     (303) 999-9999
Facsimile:     (303) 320-1915
dwalker@boesenlaw.com
Attorney for Plaintiff

 *s/ Jack M. Englert, Jr.*                         
Jack M. Englert, Jr.
HOLLAND & HART LLP
6380 Fiddlers Green Cir., Ste. 500
Greenwood Village, Colorado 80111
Telephone:  (303) 290-1087
Facsimile:   (303) 290-1606
jenglert@hollandhart.com
Attorney for Defendant