**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-0159-WJM-MEH

DESIREE JOHNSON,

    Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    Defendant.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

This case is brought pursuant to 29 U.S.C. § 1132(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"). In an order dated September 21, 2017 ("Order"), the Court held that Defendant Life Insurance Company of North America ("LINA") had unlawfully terminated the long-term disability benefits of Plaintiff Desiree Johnson ("Johnson"), and the Court directed the Clerk to enter judgment accordingly. (ECF No. 84.) Familiarity with the Order is presumed.

Currently before the Court is Johnson's Motion for Attorneys' Fees. (ECF No. 87, as revised by ECF No. 91-1.) For the reasons explained below, this motion is granted in part and Johnson will be awarded $117,000 in fees.

### I. LEGAL STANDARD

Pursuant to 29 U.S.C. § 1132(g)(1), in an ERISA action, courts have the discretion to allow reasonable attorneys' fees and costs to either party. "[C]ourts should not grant attorney's fees under ERISA as a matter of course . . . ." *McGee v. Equicor-*

*Equitable HCA Corp.*, 953 F.2d 1192, 1209 (10th Cir. 1992) (internal quotation marks omitted).

The party seeking § 1132(g)(1) fees must first demonstrate "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). When a claimant makes that showing, this Court moves on to the five relevant considerations prescribed by the Tenth Circuit for determining whether to award fees:

> (1) the degree of the opposing party's culpability or bad faith;
> (2) the opposing party's ability to satisfy an award of fees;
> (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013). These factors are sometimes known as the "*Gordon* factors" because they originated (in this Circuit) with *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983). "No single factor is dispositive and a court need not consider every factor in every case." *Cardoza*, 708 F.3d at 1207.

If the *Gordon* factors support an award of attorneys' fees, a district court must limit the amount of fees and costs to a reasonable amount. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

## II. ANALYSIS

### A. Whether Fees Should Be Awarded

There is no dispute that Johnson obtained "some degree of success on the merits." *Hardt*, 560 U.S. at 255. The Court therefore turns to the *Gordon* factors.

2

The Court finds that the first factor (regarding LINA's culpability)[1] and the fifth factor (regarding the relative merits of the parties' positions) are the most important under the circumstances. To begin, the Court held that LINA's decision to terminate Johnson's benefits was arbitrary and capricious, which is the most deferential standard of review in the law. Moreover, as explained in the Order, the basic problem with LINA's handling of Johnson's claim was its practice of "simply adopt[ing] the last piece of evidence to come in the door as its own opinion" with "no hint that contrary evidence might exist." (ECF No. 84 at 29–30.) The most notable example of this practice was LINA's unquestioning reliance on the IME report of Dr. Thurston after receiving Johnson's complaint that Dr. Thurston approached the IME in an adversarial and antagonistic way. (*See id.* at 26–27.) LINA, of course, was not required to accept Johnson's story as truth simply because Johnson said it. But LINA's ultimate decision shows no awareness that there might be any reason to question Dr. Thurston's report. In short, as to Johnson, LINA generally *collected* evidence without *examining* its true evidentiary value.

The Court also considers deterrence. Although the third *Gordon* factor is phrased in terms of deterring *others*, the Court finds that deterrence to LINA itself is also an appropriate consideration. *Cf. Gordon*, 724 F.2d at 109 ("when determining whether to award attorney's fees under section 1132(g)(1), the district court should consider these factors *among others*" (emphasis added)). An award of fees in this case would help to deter LINA from similar behavior in the future.

The Court accordingly finds that an award of attorneys' fees in Johnson's favor is

---

[1] The first factor also encompasses bad faith, but the Court does not find that LINA acted in bad faith.

3

appropriate.

**B.    Amount of Fee Award**

    1.    <u>General Standard</u>

As noted above, any fee award must be reasonable under the circumstances. *Hensley*, 461 U.S. at 433. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. This is commonly referred to as the "lodestar method" for calculating fees. *Id*.

The best evidence of reasonable fees is "meticulous time records that 'reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). The party seeking fees must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Where such an effort appears "inadequate, the district court may reduce the award accordingly." *Id*. at 433.

As for the hourly rate, the Tenth Circuit has indicated that "the court must look to 'what the evidence shows the market commands.'" *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1255). The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the

relevant community. *Ellis v Univ. of Kan.*, 163 F.3d 1186, 1203 (10th Cir. 1998).

Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436–37.

The party requesting fees has the burden to "prove and establish the reasonableness of each dollar, each hour, above zero," and bears the burden of providing the required documentation and demonstrating that the fees requested are reasonable. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986). Where an attorney fails to provide adequate documentation establishing the reasonableness of its fee request, the Court may properly reduce a fee award. *See Jane L.*, 61 F.3d at 1510.

### 2. Mr. Walker's Hourly Rate

Plaintiff's counsel, Mr. Dennis Walker, charges an hourly rate of $390, and has charged that same rate since 2014. (ECF No. 91-1 at 6.) "LINA does not contest the reasonableness" of this rate. (ECF No. 93 at 10 n.4.)

### 3. Fees Unavailable as a Matter of Law

Mr. Walker claims he billed a total of 601.7 hours to this case (a figure which includes 23.3 hours working on the attorneys' fees motion and reply brief). Mr. Walker asks for compensation for all of those hours at least at his normal rate, if not a higher rate. LINA contends that Mr. Walker is not entitled to anything higher than his normal rate, and that a certain portion of his hours is categorically not compensable under

29 U.S.C. § 1132(g)(1).  The Court will address both of these arguments in turn.

        a.     *Contingency Fee Enhancement*

At his normal rate multiplied by his hours expended, Mr. Walker would be entitled to $234,663.  However, Mr. Walker has a whopping 45% contingency-fee arrangement with Johnson.  (ECF No. 91-1 at 5–6.)  Mr. Walker calculates that Johnson's total benefits yet to be paid, up to age 65 (when the policy expires), have a nominal value of at least $405,328.  (*Id.* at 4.)  Mr. Walker will be taking 45% of this amount, or about $182,400.  He will also be taking 45% of past-due benefits, or around $13,500 (based on Mr. Walker's representation that past-due benefits are "about $30,000," *id.*).  His total fee would therefore be approximately $195,900.  In other words, under a traditional contingency fee arrangement, if the Court were to award Mr. Walker all of his hours at his normal rate then Johnson would pay nothing out of pocket and Mr. Walker would make close to $39,000 more than he would have received solely under the contingency fee agreement.

Mr. Walker, however, requests a contingency-fee "enhancement," believing that only a "combined total of benefits [to Johnson] and fees [payable by LINA] equal[] [to] about $708,000" would permit Johnson to "achieve [a] net recovery" of full benefits after subtracting the 45% contingency fee.  From this argument, it became apparent to the Court that Mr. Walker's agreement with Johnson must apply the contingency-fee percentage to the total amount of all monies recovered from the opposing party, including court-ordered attorneys' fees.[2]  *Cf. Albunio v. City of New York*, 11 N.E.3d

---

[2] To confirm this, the Court's staff e-mailed Mr. Johnson, copying LINA's attorney, requesting a copy of the fee agreement to review *in camera*.  Having now reviewed that agreement, the most the Court can say is that in places it seems to confirm the Court's view and in other places it seems to undermine that view.  The problem is the agreement's distinction, if

1104, 1109 (N.Y. 2014) (although using a statutory fee award to offset contingency recovery was the default assumption, parties by contract could treat the fee award as part of the recovery); *Cambridge Tr. Co. v. Hanify & King Prof'l Corp.*, 721 N.E.2d 1, 4 (Mass. 1999) (holding that this sort of fee arrangement is permissible as long as it is adequately disclosed); *Bishop Coal Co. v. Salyers*, 380 S.E.2d 238, 249 n.10 (W. Va. 1989) ("Depending on the terms of the contract, 'reasonable attorneys' fees' can either be taken as a credit toward the lawyer's contingent share or they can be added to the gross award and the total sum split—typically two-thirds for the plaintiff and one-third for the lawyer.").

Even so, Mr. Walker's only authority for such an enhancement is 29 U.S.C. § 1132(a)(3)(B), which permits his client to bring an ERISA lawsuit and obtain, among other things, "other appropriate equitable relief." Mr. Walker cites no authority interpreting a contingency fee enhancement as a form of "equitable relief," much less "appropriate" equitable relief. Indeed, if attorneys' fees may be "enhanced" in equity to provide a prevailing party costless relief, there seems to be no reason why attorneys' fees may not be *awarded* in equity for the same purpose. But if this Court's equitable powers extend that far, it would be the end of the oft-insisted-upon "American Rule": "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt*, 560 U.S. at 253.

---

any, between "fees awarded to the client" and "specially awarded attorney's fees" as explained in the agreement itself and in the attached "disclosure statement." These various discussions, taken together, make the true meaning indecipherable—and if the Court cannot decipher the meaning, a typical client almost certainly could not either. But Mr. Walker's view of the agreement's meaning is clear enough, and the Court can assume that Mr. Walker's view is correct without changing the outcome stated in this Order. The Court therefore need not resolve the matter.

In addition, so far as the Court can discern, every case to consider the issue has held that ERISA does not permit contingency fee enhancements. *See Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir. 2001); *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 863 n.8 (4th Cir. 1994); *Cann v. Carpenters' Pension Trust Fund for Northern Cal.*, 989 F.2d 313, 318 (9th Cir. 1993); *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 254 (6th Cir. 1992).

For all these reasons, the Court denies Johnson's request for an enhanced contingency fee.

        b.    *Fees for Pre-Suit Efforts*

LINA represents (*see* ECF No. 93 at 3, 9 n.3), and Johnson does not contest, that Mr. Walker billed 34.6 hours at the administrative claim phase, for which Johnson seeks compensation. LINA argues that "[t]he Circuits . . . have uniformly held legal fees incurred in pre-litigation administrative claim proceedings are not recoverable under 29 U.S.C. § 1132(g)(1)," but acknowledges that "[t]he Tenth Circuit has not yet considered this issue." (*Id.* at 3 & n.1.)

As LINA alluded to, so far the Second, Third, Fourth, Sixth, Eighth, Ninth, and Eleventh Circuits have held that § 1132(g)(1) does not authorize recovery of fees incurred at the administrative claim phase. *See Kahane v. UNUM Life Ins. Co. of Am.*, 563 F.3d 1210, 1215 (11th Cir. 2009); *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 313 (3d Cir. 2008); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1011 (8th Cir. 2004); *Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir. 2003); *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 121 (2d Cir. 2002); *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 455 (6th Cir. 2000); *Cann*, 989 F.2d at 316. Of course

8

these decisions are not controlling in the Tenth Circuit. However, each one grapples with the meaning of the actual statutory language ("[i]n any action under this subchapter . . . the court in its discretion may allow a reasonable attorney's fee," 29 U.S.C. § 1132(g)(1)), or Congress's intent when enacting ERISA to promote informal resolution, or both, to reach its holding. Johnson counters only with a thinly developed argument that the statutory text does not necessarily exclude fees at the administrative phase, and that Congress's purposes may be viewed from a pro-recovery standpoint as well. (ECF No. 91-1 at 11–12.)

The Court finds Johnson's argument insufficient to counter the weight of pre-existing authority on this question. The Court does not rule that fees at the administrative phase are never compensable, only that Johnson has not adequately presented an argument in favor of her position. *See, e.g.*, *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in opening brief). The Court will therefore disallow the 34.6 hours spent at the administrative phase.

    4.    <u>Unreasonably Incurred Fees</u>

LINA argues that Mr. Walker pursued various motions and other tasks without a reasonable basis and so the related hours should be subtracted from the fee claim. (ECF No. 93 at 10–13.) The total hours LINA seeks to exclude add up to 117.1. Johnson disputes LINA's calculation of some of these hours—under her calculation, the challenged hours add up to 103.7. (ECF No. 97 at 6–9.)

The Court need not resolve the dispute between Johnson and LINA over how to add up the challenged hours. The Court also need not address each of the motions or

9

other tasks that LINA challenges nor decide whether the specific hours incurred were reasonable. Even if the Court accepted LINA's argument in full and thus deducted 117.1 hours, the Court would be left with a claim of 450 hours (601.7 [total claimed] minus 34.6 [pre-suit hours] minus 117.1). The Court finds that this adjusted amount would still be excessive under the circumstances.

As the Court's prior orders have demonstrated, Mr. Walker's approach to his motions and other papers could generally be characterized as, "I will tell the Court where I want to go and I will let the Court figure out how to get me there." He has repeatedly ignored applicable standards of review. (ECF No. 72 at 3, 6; ECF No. 74.) He has repeatedly raised arguments for the first time in a reply brief or later. (*See* ECF Nos. 81–82; ECF No. 84 at 18; ECF No. 97 at 2–3.) He has needed to submit multiple corrected filings. (*See* ECF No. 91.) He has displayed a lack of understanding of fairly basic principles of postjudgment jurisdiction. (*See* ECF No. 100 at 2 n.1.) In short, despite ultimate success on the merits for his client, his approach has been generally haphazard, inefficient, unhelpful to the Court, and at times counterproductive.

LINA's counsel represents that he billed only 229.6 hours to this case, which, he says, is still more than two times his average for an ERISA case and largely attributable to Mr. Walker's litigation strategy. (ECF No. 93 at 14–15 & n.5.) Although this is a useful comparator, the Court will give Mr. Walker the benefit of the doubt that his aggressive pursuit of discovery was, at least initially, a legitimate litigation strategy. Moreover, because Johnson was the movant in most circumstances, Mr. Walker had the obligation to prepare both motions and reply briefs, whereas LINA's counsel generally only needed to prepare response briefs.

In light of all the various considerations, the Court finds that a total of 300 hours billed to this matter would be the maximum reasonable claim. Thus, at Mr. Walker's hourly rate of $390, the Court will award $117,000 in fees.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Motion for Attorneys' Fees (ECF No. 87, as revised by ECF No. 91-1) is GRANTED IN PART and DENIED IN PART to the extent stated in this Order; and

2. Plaintiff is AWARDED $117,000 in attorneys' fees.

Dated this 8th day of May, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge